### HELMKEN v. CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department. January 15, 1904.)

1. MUNICIPAL CORPORATIONS—ACTIONS FOR INJURIES—EVIDENCE—MOTION TO STRIKE.

In an action against a city for personal injuries caused by a defective street, a physician called for plaintiff testified as to the extent of her injuries, and that she was practically cured, but refused to state whether, with reasonable certainty, plaintiff would in fact suffer therefrom. Plaintiff's counsel thereupon stated that he wished to know whether there could be a recurrence of the injuries, and the court asked witness whether he could answer that, to which witness replied that they might recur, which answer defendant moved to strike. *Held*, that the answer was not proper evidence, being speculative, and without basis in fact, was not responsive to the question asked, and should have been stricken, although the question was not objected to.

Appeal from Trial Term.

Action by Katie Helmken against the city of New York. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Reversed.

Argued before HATCH, McLAUGHLIN, O'BRIEN, and INGRAHAM, JJ.

Theodore Connoly, for appellant. ·
Louis Steckler, for respondent.

INGRAHAM, J. There is one exception to evidence that requires us to reverse this judgment. The plaintiff, who tumbled into a man-

hole upon one of the streets in the city of New York, brought this action to recover the personal injuries sustained by her in consequence of this fall. She testified as to the result of the injury, and called a physician who had attended her. He testified that when he called upon the plaintiff he found that she had sustained some injury; that she had several bruises on her right leg and a prolapse or falling of the womb; that he treated her for this condition about eight months; that at the end of eight or nine months she was practically cured, the displacement was apparently cured. Counsel for the plaintiff then asked the witness: "Can you tell with reasonable certainty whether this plaintiff will suffer from these injuries?" This was objected to by the defendant, and the objection was overruled, when the witness said, "I decline to answer the question at all." The court then said, "Hasn't he already said that the injuries were practically cured?" to which counsel for the plaintiff answered: "Yes. Now I want to know whether there can be a recurrence of them." The court then said to the witness: "What is your answer? Can you answer that?" to which the witness replied, "I would say yes, that they might recur. Counsel for the Defendant: That I object to and move to strike out. The Court: I will leave it." To which counsel for the defendant excepted.

This class of evidence has been condemned so many times by this court and by the Court of Appeals that it is unnecessary to cite the authorities. The witness had refused to say whether, with reasonable certainty, the plaintiff would, in the future, suffer from the injuries, and then counsel for the plaintiff stated that he wanted to know whether there would be a recurrence of them—a question which was entirely improper, as merely speculative, and without any basis of fact, which the jury were not justified in considering in determining the amount of damage. Counsel for the plaintiff having stated what he wanted to ascertain, the court asked the witness whether he could answer that question. This called for an answer "Yes" or "No," but instead of answering "Yes" or "No" the witness said that there might be a recurrence, and counsel for the defendant then promptly objected, and moved to strike the answer out. It was not responsive to the question, and therefore a failure to object to the question did not waive the error. The evidence was entirely incompetent, and for that reason we are required to reverse the judgment.

I also think that this verdict that the defendant was guilty of negligence was against the weight of evidence. The plaintiff testified that she was walking down Catherine street, in the city of New York, and that when she got to the corner of Catherine and Henry streets she fell into a hole; that she stepped on a plate, and it went right down; that before she stepped on the plate she did not notice the plate at all; that she fell down to her armpits, and was rescued by two men, who pulled her out of the hole; she never noticed this place before, and never knew that there was anything broken or out of order in that manhole; that she did not know anything about its condition at all. Upon cross-examination she said: "As I walked along the street, as I stepped on what I said was the cover, I felt the plate going down underneath me. I stepped on something, and that gave way beneath

me, and I went down to my armpits." It is quite clear from this state-ment that all the plaintiff knew was that as she walked along the street she fell into the hole, but she expressly testified that she did not notice the plate at all before she fell.

Two men, who were driving a truck in the neighborhood, and who pulled the plaintiff out of the hole, were first attracted to the occurrence by hearing the woman scream, when they went over and took her out of the hole and took her to a drug store. Neither of these men saw any covering to the manhole. The plaintiff also called as a witness one Mary Shea, who lived in the neighborhood. She testified that she was standing near this manhole, talking to a companion, when she "heard a noise like somebody stumbled—fall, and I looked, and there saw the woman in the manhole. * * * The cover had been cracked. It has been shaky. When I saw her I did not see her step upon the cover. * * * This manhole there at this corner in which she fell, it had been cracked, but not to notice anything about it, or to say anything, for to say anything. * * * I noticed it had been cracked. I should judge about maybe about four or five weeks. Maybe it was before that. But, as far as I can recollect now, I did not report it. I did not think anything of it. I noticed it was shaky, and when anybody went over it it made a kind of a noise." The witness was shown a broken cover, and she testified that she could not say whether that was the cover or not that was on the manhole. She then made a drawing of the crack in the covering, as she remembered it, and she stated that this crack started at one edge of the cover, went in towards the center, and then back to the other rim. This was the only testi-mony introduced on behalf of the plaintiff as to this cover.

On behalf of the defendant, the proprietor of a drug store lo-cated on the corner of Catherine and Henry streets, directly in front of the manhole into which the plaintiff fell, testified that he was at the store on the afternoon of April 30th, when the plaintiff was brought in by the policeman; that he remembered seeing a boy lift up this manhole cover and put it back again; that there was nothing the matter with the cover; that there was a school on the opposite corner from his store, and at all times during April, and prior to the 30th of April, children were playing out in the street and around the corner; that he saw the children lift the cover up the day be-fore the accident and drop it back, the way they generally did; that the cover was whole then; that there was no crack in the cover then that he could see a distance of 15 feet. Upon cross-examination he testified that he could not remember seeing the boys take this cover up on the day of the accident, but remembered that, as the day be-fore was Sunday, they did it a half dozen times, and had been doing it right along; that he was sure it was not broken the day before; that he saw the boys take the cover up whole; that the boys took up the cover to get their balls which rolled down into the sewer; that this happened every day before he left the store. The defendant also called the police officers who were stationed at this locality. They testified that it was their duty to be at this corner every day at the opening or dismissal of the public school; that they stood at the corner to protect the children in crossing the street. One of the

officers testified that he stood on the top of this manhole frequently; was there the day of the accident to the plaintiff when the school got out, and the cover was not broken when he was there; that it was on the sewer hole; that he stood on this particular corner, as he was then in front of the schoolhouse, and so could protect the children crossing the street; he was on that post at the time of the accident, and had been at this manhole about a half or three-quarters of an hour before the accident; that after the accident he reported that the manhole cover was gone; that he never saw this cover broken or cracked. Three other policemen, who were also upon that post, testified that they were constantly passing over this street; that there was nothing the matter with this cover; that each of them had crossed and recrossed it many times, stood on it and walked over it, as it was in a direct line of travel up and down the streets; that people walked over it all the time.

Considering the indefinite statement of the witness for the plaintiff as to the crack in the sewer cover, the undisputed evidence on behalf of the defendant that the day before the accident and prior thereto the boys were in the habit of lifting this cover to get their balls which had rolled into the sewer, the testimony of the policemen whose duty it was to examine this locality and ascertain if the cover to this hole was safe, the fact that these policemen had stood upon the manhole a day or two before the accident, and had been past the locality on the day of the accident, and no defect in the cover was disclosed, it certainly cannot be said that there was a preponderance of evidence that this cover was so broken as to render it unsafe for persons using the street for any appreciable time before the accident. Assuming that it had a crack in it, as testified to by the witness for the plaintiff, for two or three weeks before the accident, there is no evidence that such crack rendered it unsafe, or that this crack was the cause of its falling when the plaintiff stepped upon it. Even if the piece that the plaintiff's witness testified was cracked was entirely broken out, it is quite apparent that the mere stepping upon such a cover would not cause it to fall, and there is no evidence to connect the fall of the cover with the fact that it was cracked, even if it could be said that the evidence of the crack was sufficient to justify the jury in finding that it existed. The evidence of this woman is extremely indefinite, both as to the time the crack existed and as to what she noticed about it. It is quite probable that when one stepped upon this cover it made some movement, or, as described by this witnes, it "wabbled"; but there is no evidence that such a condition made it unsafe, or rendered it liable to fall when one stepped upon it; and the fact as to the boys lifting it up to get at their balls which had rolled into the sewer would account for the condition of the cover, so that when she stepped upon it in that condition it had fallen through. It is not claimed that the city would be responsible for an accident caused by the action of boys in the street in moving this cover and failing to replace it properly. And, taking all the testimony together, I do not think that it was fairly proved that this cover was in a dangerous condition at any time prior to the accident, or that the plaintiff's falling was caused

by any negligence of the city in not keeping this portion of the street in a safe condition.

I think, therefore, that the judgment and order should be reversed, and a new trial ordered, with costs to the appellant to abide the event.

McLAUGHLIN, J., concurs.

O'BRIEN, J. I concur on the first ground, viz., the error committed in refusing to strike out incompetent evidence.

HATCH, J., concurs.